# PROVIDENCE COUNTY.

———✦———

JOHN CLARKE et ux. vs. THE RHODE ISLAND ELECTRIC LIGHT-
ING COMPANY.

When the plaintiff's right to recover depends on the defendant's negligence and the plain-
tiff's exercise of reasonable care, if the facts are complicated or unusual, or such that dif-
ferent minds fairly considering them might draw from them different conclusions, the
question of negligence is for the jury.

A woman passed out of a dry goods store by a side door on to a private gangway, but one
concreted and open to public travel in a business district.  A ladder, which had been left
against the wall by a servant of an electric lighting company, was blown over on her and
injured her.  The front of the store was crowded, the side door often used by customers.
The day was windy.  On the side of the building by the gangway was a sign, "Private
property, dangerous passing."  The woman testified that on passing out the door she was
alarmed by a noise made in fact by the ladder swaying, but which she supposed might
come from a running horse, and that she did not perceive her danger until too late to avoid
the ladder.

*Held*, that the question of negligence was properly left to the jury, and that the court would
not disturb a verdict in favor of the woman and against the electric lighting company.

DEFENDANT'S petition for a new trial.

*February* 16, 1889.  DURFEE, C. J.   The female plaintiff was
injured, while passing through a private gangway in the city of
Providence, by having a step ladder, which was left leaning against
a building in the gangway by the defendant's servant, blow over
or fall upon her.   She sued the defendant and has recovered dam-
ages, the ground of her action being that her injuries resulted
from the negligence of the servant in leaving the ladder as he did.
The case was tried in this court, and comes before us now on mo-
tion for new trial.   The questions presented depend so entirely
on the testimony, and the facts and circumstances shown thereby,
that those facts and circumstances need to be carefully stated.

The gangway leads from Westminster Street, the principal busi-
ness street of the city, to Exchange Place, so called.   It is eigh-
teen feet wide, smoothly concreted between the curbs.   Twenty
feet from Westminster Street and fifteen feet from the sidewalk,
which is two and a half feet wide, there is a sign fastened to
Brownell's Building, a business block abutting on the gangway,
on which sign are the words, PRIVATE PROPERTY: DANGEROUS

PASSING. The first story of Brownell's Building was leased to the firm of B. H. Gladding & Co., who used it as a dry goods store. They used the gangway under their lease for the receipt and discharge of merchandise. There was a door opening on it, through which their employés, numbering fifty six, were required to come and go, and through which their customers were also accustomed to come and go, using the gangway for the purpose. A member of the firm testified that the store was narrow and apt to fill up in front, so that there was difficulty in passing through, and consequently the customers were in the habit of going out and in by said side door. The plaintiff entered the store from Westminster Street, and when she had finished her shopping, finding the front crowded, passed out by the side door, as she had been accustomed to do, for the purpose of going through the gangway to Westminster Street, and met with the accident while doing so.

When she came out the step ladder was on the sidewalk forty feet distant toward Westminster Street. The step ladder was nine feet high, and was used by the defendant's servant in his work as servant. The defendant was maintaining electric lights for the firm of B. H. Gladding & Co. A box containing electrical apparatus for switching the lights on in the store was fastened to Brownell's Building fifteen feet above the sidewalk where the ladder stood. The servant had charge of the lights in the store and along Westminster Street, and, just before the plaintiff came out of the store, had been using the ladder to reach the box in the proper performance of his service. After doing what was required he left the ladder standing unsecured, and went into a store in Butler Exchange, on the opposite side of the gangway. It does not appear for what purpose he went, but he returned in about five minutes, just after the accident had occurred. He testified that he had, earlier in his employment, been accustomed to leave the ladder lying on the walk; but a lady caught her dress in it one day, while it was so lying, and the janitor of the building told him to leave it standing. The janitor testified that he told the servant that it was dangerous to leave it standing, and a member of the firm testified that he had considered it dangerous, and told the janitor that he did not wish it left there.

The accident occurred November 4, A. D. 1887, between 1.30

and 2.00 o'clock P. M. The day had been blustering, the wind blowing in gusts, and at the time of the accident was blowing quite violently from the north. The plaintiff came out into this wind, " blowing very hard almost continuously," says a witness who saw the accident, and immediately noticed a scraping noise, which she supposed might be caused by a horse running away, and which seems to have alarmed and confused her so that she was near the ladder before she perceived that it was swaying in the wind and making the noise that she heard, or realized the danger she was in from it. She then attempted to run across the gangway to escape, the wind all the while blowing strongly against her, and was overthrown in doing so, the ladder falling on top of her.

At the close of the testimony for the plaintiffs the defendant made several requests for instruction to the jury, which the court refused to grant. This refusal is the ground of the motion for a new trial. The requests were in effect requests to the court to charge that this testimony did not show that the defendant's servant was guilty of any negligence, or that, if it did, it also showed that the plaintiff was equally guilty of negligence, or was at least guilty of contributory negligence, and was not, therefore, entitled to recover.

Generally the question of negligence is a question of fact to be determined by the jury ; but sometimes, when there is no controversy as to the facts, and when it clearly appears from them what course a person of ordinary prudence would pursue, it is a question for the court. So, when the standard of duty is fixed, or when the negligence is clearly defined and palpable, the court will not leave the case to the jury. But cases of this kind are few, and are generally cases in which the situation is so simple that any person of ordinary prudence would instantly perceive what to do or what to refrain from doing. Thus it is recognized by the courts as negligence for a passenger by steam car to attempt to leave it while it is in motion. So it is recognized by the courts to be negligence for a traveller to drive across a railroad track at grade without first assuring himself, by looking up and down the track, that there is no danger from an approaching train. But where the facts are complicated or extraordinary the case is usually left, and

properly left, to the jury. So, whether the facts be disputed or not, if they are such that different minds, fairly considering them, might draw different conclusions from them, the question of negligence is for the jury. 2 Thompson on Negligence, 1286 ; *Boss* v. *Providence & Worcester R. R. Co.* 15 R. I. 149, 154.

It seems clear to us, in the light of these rules and principles, that the case at bar was properly a case for the jury, and that the court would have usurped the province of the jury if it had undertaken to decide it. Take the primary question, Was the defendant's servant guilty of negligence in leaving the ladder as he did ? The question is, whether, when he left the ladder, being such a machine as it was, on the narrow sidewalk, leaning against the building at the angle at which it leant, in the gangway used, as it was, at a time of day when it was likely to be used by women coming from shopping at the store, with the wind blowing as it did strongly, and with unsteady gusts, he was guilty of negligence. The question is not to our minds simple and plain, but complicated, and fairly susceptible of different answers. We, who look back from after the event, see that it was dangerous for the servant to leave the ladder as he did. The question is, whether he should not have seen beforehand that it would be dangerous. We think this was clearly a question for the jury. It was the wind, blowing as it did with such force and fitful violence, that introduced an element which made the case peculiarly a case for the jury.

The defendant contends that there was no negligence if the servant did simply what it would have been prudent for him to do in ordinary circumstances. The servant was bound to exercise reasonable care, and reasonable care, as we understand it, is a degree of care which depends upon the circumstances and varies with them. It is such care as prudent men would ordinarily use in the circumstances which call for its use. The degree of care that would be reasonable in driving through a street in its ordinary circumstances might fall far short of being reasonable if the street was full of small children just let out of school. The care which would be reasonable in managing a sailboat in ordinary circumstances might not be reasonable in a gale of wind. The duty of care increases with the increase of danger.

Did the court err in refusing to instruct the jury that the plaintiff could not recover because she was guilty of contributory negligence ? The question, whether she was guilty, is not free from complexity. The plaintiff came out of the store, where she had been shopping, into an entirely new set of circumstances. The wind was blustering about her; she heard a noise which startled her, ignorant as she was of the cause; her mind was thus distracted ; the ladder was near the door from which she came, so that a moment only elapsed before the accident, and she had no time to collect and compose herself; and the question is whether, in these circumstances, it was negligence on her part not sooner to give attention to the ladder, and appreciate the danger incident to its position. The question may be simpler than the first question, but there was certainly complication and doubt enough about it to make it proper for the court to leave it to the jury. *Boss* v. *Providence & Worcester R. R. Co.* 15 R. I. 149, 157.

The defendant contends that the plaintiff ought not to recover because the place where she was injured was a private gangway. The gangway was private property, but it was open to public use, and especially to the use of the customers of the firm of B. H. Gladding & Co. The servant, who knew how the gangway was used, was bound to exercise the degree of care which was appropriate to that use. The plaintiff was likewise bound to such care as was appropriate to the character of the gangway ; but we do not think it can be said that her mere going there was negligence, considering that she was there as a customer of the firm of B. H. Gladding & Co., lessees of the abutting building, by their permission, and by their permission so given that the jury might well regard it as equivalent to an invitation. *Corby* v. *Hill,* 4 C. B. N. S. 556 ; *Clark* v. *Chambers,* L. R. 3 Q. B. Div. 327 ; *Carleton* v. *Franconia Iron and Steel Co.* 99 Mass. 216 ; *Toomey* v. *Sanborn,* 146 Mass. 28 ; 1 Thompson on Negligence, 307, 308. Besides, this action is brought, not against the owners of the gangway in consequence of any defect or danger existing there by their default, but against the defendant for the carelessness of its servant, who carried the ladder there, in the course of his employment, for a proper purpose, and, after the purpose was accomplished, left it there, a danger to the customary travel. The

danger was one not incident to the gangway, but introduced from without.  Why should the author of such a danger be exempt from liability to a person injured thereby, while rightfully using the gangway, because the gangway was private property and dangerous?  How did its dangerousness, or the notice that the passing was dangerous, give him a right to add a new danger to it by leaving the ladder as he did?  As to the notice, it may be questioned whether, in view of the sanctioned use, it was intended as more than a warning in regard to the danger of vehicles passing in opposite directions, or of passing when the gangway was obstructed by merchandise or teams loading or unloading there.  It does not seem to us that these matters relating to the character of the gangway and its uses were matters which made it the duty of the court to take the case from the jury and decide it for itself.

We are not satisfied that a new trial ought to be granted because the verdict is against the evidence or the weight thereof.

*Petition dismissed.*

*Daniel R. Ballou & Frank H. Jackson,* for plaintiffs.

*Benjamin F. Thurston, William W. Douglas & Samuel T. Douglas,* for defendant.