ABBIE LANDERS *vs.* SHIRLEY F. BROOKS & another, trustees.

Middlesex.    October 21, 1926. — November 27, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Landlord and Tenant*, Repairs, Fire escape.

The wife of a tenant living on the third floor of a four-story tenement cannot maintain an action against the landlord for personal injuries received by reason of a defective condition of a fire escape outside the tenement, access to which was from a window and which she was using to pass over and bring back into the house her nine year old son, who, in disobedience of her instructions, was on the second-story landing of the fire escape, and who, as she thought, was in danger.

TORT for personal injuries. Writ dated May 14, 1924.

In the Superior Court, the action was tried before *Keating*, J. Material evidence is stated in the opinion. At the close of the plaintiff's evidence, on motion by the defendants, a verdict was ordered for the defendants. The judge then reported the action to this court for determination, the parties agreeing that, if the order of a verdict for the defendants was right, judgment was to be entered on the verdict; otherwise judgment was to be entered for the plaintiff in the sum of $900.

*H. R. Donaghue,* for the plaintiff.

*L. C. Doyle & J. J. Sullivan,* for the defendants, submitted a brief.

CARROLL, J.   The plaintiff with her husband and family occupied an apartment in a four story building owned by the defendants.   There were two apartments on each floor. There were no rear stairs, and no rear entrance to the building except to the apartments on the ground floor.   The apartments above the ground floor could not be reached by this entrance.   "There was a fire escape on the back of the building," with platforms on the second, third and fourth floors.   A window in the plaintiff's apartment was opposite the third floor platform.   The stairway of the fire escape led from the fourth floor platform to the third and from there to the second.   From the second floor platform, which was about twelve feet above the ground, a ladder two or three feet long extented toward the ground. The platforms were twelve or fourteen feet long, "and ran by certain windows of the inside flats," entrance to the fire escape being through these windows.

The plaintiff's husband hired the flat on the third floor in 1910.   The plaintiff testified that when "she and her husband" hired the tenement, "some seventeen years ago," the fire escape seemed to be in good condition; that she had never gone upon the fire escape previous to the accident, but on one occasion she had seen her son on the platform opposite her window; "that she had taken him off . . . and warned him to keep off"; that on the day of the accident she saw her child, who was then nine years old, on the fire escape near the second floor landing; that he was crying and she thought he was in danger; that she went through the window of her apartment on to the platform of the fire escape and started to descend, when two of the steps gave way under her weight and she fell to the second floor platform; "that there was no way she could reach her boy except by going through the window and down the fire escape."   She further testified on cross-examination that this was the first time she had used the fire escape; that the only way it could be used "was by a person going through a window of a flat connected with the fire escape."

There was testimony that the fire escape was unsafe; that there was nothing to indicate it had ever been painted; that

a fire escape "as close to the salt water as that was, ought to be painted at least every two or three years in order to keep it from rusting and corroding"; that "the bolts and bars were all corroded and rusted and apt to snap off," and this condition had continued for many years. The plaintiff's husband testified that when he hired the tenement the fire escape was in good condition; that he thought it was painted a few years after the tenancy began, but it had not been painted since; that a short time before his wife was injured he had a conversation with the defendant's agent "in the back yard in view of the fire escape," in which the agent said that the "fire escape was rotten, and that someone would break their neck on it"; that following the injury the third and fourth steps of the fire escape leading from his tenement to the second floor were broken and had fallen to the ground, and that the bolts at both ends were broken. A verdict was directed for the defendants and the case reported to this court.

The fire escape was intended for use in case of danger from fire. It was not to be used for other purposes. No duty was imposed on the defendant to keep it in proper repair except in case of fire. It was not designed for entrance or exit to the apartments, and it was not contemplated that it should be kept in a safe condition for all purposes and every kind of service. We decided in *Eisenhauer* v. *Ceppi*, 238 Mass. 458, that if the landlord agreed with his tenant to keep the place safe at all times, the promise of safety did not extend to a piazza roof or to every part of the demised premises which could be reached by going through a window; that it was not intended that all parts of the premises were to be kept in a condition of safety under the agreement, when it was apparent that the piazza was not expected to be used by the tenant in the course of his tenancy. The principle of that case is decisive of the case at bar. The entry is to be

*Judgment for defendants on the verdict.*