JOHN T. FLOYD *vs.* EVANGELISTE TURGEON.

JULY 16, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This action of trespass on the case for negligence was tried to a jury in the superior court and there was a verdict for the plaintiff for $30,000. On defendant's motion for a new trial, the trial justice approved the verdict on condition that the plaintiff would remit all of the damages in excess of $16,500. Plaintiff declined to do so and excepted to the ruling. Defendant also excepted because the ruling did not order a new trial unconditionally. The case is here on bills of exceptions brought by both parties.

The defendant's bill contains numerous other exceptions which he took during the trial. We shall consider these before taking up his exception to the order for a new trial. That exception and plaintiff's exception will thereafter be considered together.

The plaintiff's cause of action arose out of an accident which happened to him while performing his duties as a night watchman on premises of his employer, the Paragon Worsted Company, in the city of Providence, on Sunday, October 1, 1939, at about 8 p. m. Sometime during that day the defendant's servants removed an outside metal stairway or fire escape from the doorway on the second floor of a mill building on said premises, known as the M. & F. building. The defendant was an independent contractor who had contracted with the Paragon Worsted Company, hereinafter referred to as the company, to build an addition to its M. & F. building. It was in the course of the performance of this contract that it became necessary to remove the metal stairway or fire escape. After removing it, defendant's servants failed to barricade the doors which

opened on to it or to post any warning that it had been removed.

Plaintiff used this stairway or fire escape regularly on Sundays in making his rounds of the M. & F. building. He had been instructed to do so when he was first employed as a night watchman by the company. He had no knowledge that the defendant was going to remove the stairway; he was not told that it would become necessary for the defendant to remove it; and he did not know, on Sunday, October 1, 1939, that it had been removed.

On that day he reported for work at 6 p. m., his regular hour. Shortly thereafter he made his first rounds of the premises, but, because it was raining heavily, he did not use the metal stairway or fire escape. Instead he walked to the other end of the building and went down the inside stairway. However, on his second round, at 8 p.m., it was raining lightly so he decided to follow his usual custom of leaving the M. & F. building by way of the metal stairway or fire escape. The interior of the second floor was "pitch dark". The shades on the windows were all drawn and there was no power in the building. Plaintiff carried a type of kerosene lantern, customarily used by railroad men, which illuminated the darkness for a distance of about two feet.

With his lantern in one hand, plaintiff, with the other hand opened the door to the metal stairway or fire escape. There were double doors at this doorway, one was held by a bolt which fitted into a hole in the floor and was not opened; the other door was held by a spring catch at the top, to which a chain was attached. When this chain was pulled, the catch was released from a socket and the door opened outward onto the platform of the metal stairway or fire escape, which was almost level with the threshold of the doorway. When the plaintiff opened this door, he stepped out, as he thought, upon that platform, but, there being none, he plunged about twenty feet to the ground and was severely injured.

On this evidence, defendant moved for a directed verdict which was denied. He excepted to this ruling and this exception is numbered 56 in his bill. In support of this exception, he contends that there is no evidence of any negligence on his part and that the plaintiff was guilty of contributory negligence as a matter of law.

Under the first ground, the defendant argues that since he could not reasonably be expected to know that the metal stairway or fire escape might be used for other purposes, he cannot be charged with knowledge of danger to the plaintiff. This argument is unsound. It is predicated upon the view that such a means of egress, as this metal stairway or fire escape, is as a matter of law intended for but one purpose, namely, escape from the building in the event of fire. Such a view is erroneous. This particular fire escape or metal stairway led from a doorway on the second floor of the building down to the ground and was affixed thereto. If anything, its position indicated it could be used for other purposes. As a matter of fact, it was regularly so used by this plaintiff, in accordance with instructions which he had received from his employer. It also appeared from the evidence that two other persons, who had been employed as night watchmen on the premises, also used the metal stairway or fire escape in the same manner as the plaintiff. Whether or not the defendant, under the circumstances, ought to have done something to warn persons lawfully upon the premises that there was danger beyond the doorway by reason of his removal of the metal stairway or fire escape therefrom, was a question of fact for the jury.

Defendant cited the following cases as authority for his contention. *Kimatian* v. *New England Tel. & Tel. Co.*, 49 R. I. 146; *Wojtyna* v. *Bazar Brothers & Co.*, 47 R. I. 221; *Carey* v. *Baxter*, 201 Mass. 522, and *Landers* v. *Brooks*, 258 Mass. 1. Neither of our cases is in point on the facts in the case at bar. We have examined the Massachusetts cases and we do not find that they support the broad proposition advanced by the defendant. The *Carey* case presented facts which led the court to find that the defendant clearly could

not have supposed that the plaintiff was ignorant of the danger of which she later complained, and, therefore, he was not bound to warn her of it or otherwise to exercise special care to protect her from it. The *Landers* case, besides differing from the case at bar on its facts as to the location of the fire escape and the means of access to it from the building, was a case involving the obligation of a landlord to his tenant and therefore of questionable pertinency to the case at bar.

Defendant's other ground of his motion, that the plaintiff was guilty of contributory negligence as a matter of law, is clearly without merit. Whether or not in stepping out of the doorway as above set forth the plaintiff did all that an ordinary prudent man would have done under the circumstances was a question for the jury. Contributory negligence is usually a question of fact and only rarely a question of law. Where the facts are such that a person of ordinary prudence would instantly perceive what to do or what to refrain from doing, it may become a question of law for the court. *Clarke* v. *Rhode Island Electric Lighting Co.*, 16 R. I. 463. We do not think that the facts here bring the plaintiff within that rule. Defendant has cited *Zielinski* v. *Riley,* 61 R. I. 14 and *Coburn* v. *United Electric Rys. Co.*, 128 A. 435 (R. I.) and relies upon them in support of his contention that the plaintiff was guilty of contributory negligence as a matter of law. The cases do not help him in this respect. As a matter of fact the question of the plaintiff's contributory negligence in the *Zielinski* case was left to the jury and the *Coburn* case was cited therein only for its exposition and application of the doctrine of the last clear chance.

As a final or supplementary ground of his motion, defendant argues that the evidence shows that the act of a third party "supervened" and caused plaintiff's injury. Such act, as we understand his argument, was the knowledge of the president of the company and of its day watchman that the metal stairway or fire escape had been removed and

their failure to communicate that knowledge to the plaintiff. Defendant cites *Mahogany* v. *Ward*, 16 R. I. 479 in support of his position. The principle therein laid down and followed is well known. Briefly stated it is this: Where the negligence of a responsible third party intervenes between the original negligence of the defendant and the plaintiff's injury, the causal connection between the latter two may be broken and such act of the third party may be the proximate cause of the injury.

The facts in the *Mahogany* case illustrate the above principle and we think also indicate wherein the facts of the case at bar do not warrant the application of the principle to them. In that case a town was sued for negligence in permitting a post to remain so near the traveled portion of the highway that the plaintiff, while driving a carriage along the highway, was injured by reason of the fact that another traveller on the highway who was driving on the wrong side thereof forced plaintiff to collide with the post. Plaintiff recovered in her action, but on defendant's petition for a new trial this court sustained the petition, on the ground that the act of the third person in crowding the plaintiff off the traveled portion of the highway, was the independent act of a responsible person which broke the causal connection between the original negligence of the town and the plaintiff's injury.

In the case at bar it can hardly be said that the mere failure of the day watchman and the president of the company to tell the plaintiff that the metal stairway or fire escape had been removed was the independent act of a responsible third person sufficient to break the causal connection. Since all of the grounds upon which the defendant rested his motion for the direction of a verdict have been found insufficient, his exception 56, to the denial by the trial justice of such motion, is overruled.

Defendant's exceptions 16, 17, 18, 37, 38, 42, 43, 44, 45, 47, 48 and 49 raise substantially the same question, that is, whether it was either relevant or material for the defendant

to show that the metal stairway or fire escape had not, to the knowledge of certain witnesses, been used by persons, other than as a fire escape, to go in or out of the M. & F. building. In support of the admission of such evidence, defendant argued that he had no direct knowledge of the use of the metal stairway or fire escape other than as a fire escape, and therefore that he was entitled, in the absence of such knowledge, to throw into the scales, for what it might be worth, the testimony of certain witnesses that they did not know of any use of the fire escape or metal stairway except as a fire escape.

Any objection to such testimony, defendant argued, would lie more properly to its weight than its admissibility. This contention is unsound. It seems to us that any evidence tending to show that other persons had not used the metal stairway or fire escape or that certain persons had never seen any one using it would not be relevant to the issue on trial; or if it were so, it would be very remote and would be completely lacking in materiality. Such evidence would have no probative force and furthermore, in our opinion, it would tend strongly to confuse the jury as to the real issue. There was no prejudicial error in the exclusion of such evidence. All of defendant's above-enumerated exceptions thereto are overruled.

Defendant's exceptions 33, 34 and 51 are to rulings admitting certain medical testimony over defendant's objections. Plaintiff had been treated for a very serious fracture of the hip described by the medical witnesses as a complete intracapsular fracture of the neck of the left femur with upward displacement of the shaft of the femur. This fracture was remedied by an operation known as the Johansen nail operation. At the date of the trial a good result had been obtained by such operation. There was, however, according to the evidence, no long experience with fractures thus treated and plaintiff's counsel asked his medical witness, Dr. Sage: "In those cases under the old method, where a good union is achieved, what is the history of that type

of injury?" Defendant objected on the ground that the X rays in evidence showed that plaintiff had achieved a good union under the Johansen nail operation and, therefore, evidence of the experience with such fractures under the old method of operation was not relevant and would tend only to confuse the jury and lead them to believe that the good result obtained up to that time in the plaintiff's case would not be permanent. The trial justice allowed the question and defendant excepted, such exception being numbered 33.

Plaintiff contended that since previous testimony was to the effect that the Johansen nail operation was of recent origin and case histories thereunder were insufficient upon which to base an opinion from experience, it was not irrelevant to show what the experience was under the former method of operation where a good union had been obtained. On the state of the evidence at that point we are of the opinion that such testimony was not absolutely irrelevant. So long as it was clear that the plaintiff had been treated under a different and apparently better method, it could not prejudice the defendant merely to show from experience how serious such a fracture was and how difficult it was to achieve a permanently good result, even where a good union had been achieved. Defendant's exception 33 is accordingly overruled.

Defendant's exception 34 is to testimony of Dr. Sage relative to a recurrence of the fracture. Defendant did not object to the question propounded to Dr. Sage but did object after the witness had answered. The trial justice overruled the objection and noted defendant's exception, but defendant did not move to strike out the testimony. We have often held that an exception thus taken presents no question for this court to determine. However, although we are not required to rule on the exception, we think it well to observe that from our reading of the transcript the defendant was not prejudiced by such testimony.

228

Defendant's exception 51 is to a ruling of the trial justice allowing plaintiff's counsel to cross-examine defendant's medical witness, Dr. Harris, as to the nature of a reconstruction operation. Defendant contended that there was no definite evidence then in the case upon which to base such a question and the answer thereto. Plaintiff contended, however, that the inquiry was a proper one as Dr. Harris had previously testified: "We can do a reconstruction on the femur and have a very good leg." We do not think it was error, under the circumstances, to allow this testimony to be admitted.

It is true that there was no evidence that such an operation was indicated or likely in the plaintiff's case, but there was testimony that the nail used in the Johansen operation could cause an interference with the blood supply which in turn could cause a necrosis in the head of the femur. Such a necrosis would necessitate a reconstructon operation, in the opinion of Dr. Harris. His description of such an operation was naturally called for to explain what he meant thereby and thus to prevent speculation on the part of the jury. Since the testimony was relevant, we cannot now hold that its admission was prejudicial. Defendant's exception 51 is accordingly overruled.

Defendant's exception 58 is to the granting of the plaintiff's second and sixth requests to charge the jury. We have carefully considered these requests in connection with the charge as a whole and especially in the light of defendant's contention that they were inconsistent with each other and tended to put upon the defendant the obligation of an insurer. We find no merit in such contention. These requests were phrased in easily understandable language and clearly instructed the jury that they were to determine from the evidence whether or not defendant had, by removing the outside metal stairway or fire escape without posting a warning of such removal, created a danger to persons lawfully using it, and whether or not the defendant could have reasonably anticipated use by the plaintiff of the door on

the second floor opening onto the outside stairway or fire escape.

The defendant cites *Greenhalch* v. *Barber,* 104 A. 769 (R. I.) in support of his contention that the granting of these requests constituted reversible error. The charge which was objected to in that case and which was disapproved by this court is a far cry from the language of the requests to charge objected to by the defendant here. There the trial justice at one point in his charge instructed the jury that the defendant must use "all possible care" and later stated that he must use the "care of an ordinary prudent man under the circumstances." This was plainly giving the jury two different and necessarily inconsistent rules of law by which they were to measure the duty of the defendant. But such is not the case here. Defendant's exception 58 is, therefore, overruled.

Defendant's exception 60 is to the denial of his motion for a new trial unconditionally. In support of this exception he argues: (1) That negligence on his part was not established by a fair preponderance of the evidence; (2) that the damages awarded by the jury are grossly excessive; (3) that as reduced by the trial justice they are still grossly excessive; and (4) that plaintiff's counsel by referring, in his argument, to the ability of defendant to pay such damages as the jury would award, misled them in the application of the correct law to the evidence.

Immediately after plaintiff's counsel made such reference defendant objected and contended that it was improper and prejudicial. The trial justice sustained defendant's objection, promptly stopped plaintiff's argument and stated that he considered the reference "highly prejudicial" and "if counsel for the defendant should move to take this case from the jury, the Court would have to grant the motion." Defendant did not make such motion but contented himself with taking and having noted an exception to the particular part of the argument to which he had objected. Of course, such an exception brings no ruling of the trial court to this court for re-

view. But defendant has tried by indirection to make it serve him as a ground of his exception to the denial of a new trial. Obviously, such a practice would only tend to confuse the orderly and simple method of review by bill of exceptions and has no warrant under our statute providing for such review. G. L. 1938, chap. 542, § § 1, 2 and 3. *Horaho* v. *Wanelik,* 56 R. I. 193; *Industrial Trust Co.* v. *Feuer,* 177 A. 351 (R. I.).

The trial justice in the instant case substantially followed the procedure which was described in those cases as the proper one to follow in order to remove any prejudice to the objecting party that might have been created in the minds of the jury by the remarks of plaintiff's counsel. He sustained defendant's objection and very early in his charge, at defendant's request, he referred expressly to the objectionable remarks and stated that they were improper. He further said in the next two sentences: "The fact that a defendant is able to pay is not a matter that you must give any consideration to here. You must decide the issues on the evidence as it has been given to you and disregard any argument made to you by plaintiff's counsel that the defendant has the means to pay any money you may award the plaintiff, and the argument of plaintiff's counsel in this respect must be entirely removed from your minds in deciding the case." Defendant thus obtained the maximum relief to which he was entitled under the law as laid down by this court in the above-cited cases. The jury having been thus explicitly instructed in the law as well as to the alleged impropriety of the argument of plaintiff's counsel, it must be presumed, on the consideration of a motion for a new trial, that they obeyed the court's instructions and disregarded the argument of counsel, *State* v. *Farr,* 29 R. I. 72.

Without discussing the evidence, we may say that the first ground of defendant's exception to the denial of his motion for a new trial unconditionally is not borne out by our examination of the transcript. There was, in our opinion, sufficient evidence from which the jury could reasonably find, as

they did, that the defendant was' negligent and that the plaintiff was in the exercise of due care. Since the trial justice has approved their verdict in these respects, we cannot disturb it unless his decision was clearly wrong. We can not, on our view of the evidence, say that it was.

The second and third grounds of defendant's exception and the plaintiff's exception relating to the damages will now be considered together. Defendant contends that the jury's award of damages is grossly excessive and that the damages as reduced by the trial justice are still excessive. Plaintiff, on the other hand, contends that the jury's award is fair and that it reasonably corresponds to the evidence. He further argues that the trial justice was clearly wrong in reducing the damages to $16,500.

The award of damages must represent a reasonable response to the evidence as compensation to the plaintiff, and that only. If it goes beyond this and represents a gratuity to the plaintiff based solely on sympathy for him because of his injuries, or is punitive in its nature, manifestly it cannot stand. However, if it is grossly excessive and such excess can reasonably be determined, the award should be reduced accordingly and, as thus reduced, be permitted to stand.

In the instant case the trial justice has found, after carefully weighing and analyzing the evidence in the exercise of his independent judgment, that the damages are improper in this latter respect. His decision points out the elements of the damages and the compensation therefor which he thinks is reasonable from the evidence. He adds these together and finds that the verdict of the jury is excessive to the extent of $13,500. Such an excess is certainly a gross one, and it is clear from this finding that the different conclusions of the trial justice and the jury do not represent merely two different reasonable views of the evidence. If they did, we would be compelled to sustain the verdict of the jury. Only when the verdict is grossly excessive should the trial justice set it aside.

We have often said that the trial justice is charged with an exceedingly important, if difficult, duty when he is called to pass upon a motion for a new trial on the ground that the damages awarded by the jury are grossly excessive. And we have said that he ought not to decline the discharge of that duty or to perform it merely in a perfunctory way, however difficult and delicate it may be.

In certain respects the trial justice was, in the instant case, in a more advantageous position than this court to perform this duty. He presided at the trial and saw the plaintiff and the witnesses in the court room and on the witness stand. From these vantage points his evaluation of the testimony cannot but be of strong and persuasive force if he has applied to the evidence his careful and independent judgment. We think that the trial justice has done that. His decision, therefore, should not be set aside, unless it is clearly wrong or unless we find that he has overlooked or misconceived some vital evidence or has applied a wrong rule of law to the evidence.

We are of the opinion that he was clearly in error in only one respect, and that is a mere matter of computation. The plaintiff has pointed out in his brief that this error amounts to $485 and arises from the fact that the trial justice, after allowing plaintiff for loss of future earnings for two years from the date of the verdict, fixed the figure therefor at $2500, whereas, according to the evidence, it would be $3120, which reduced to its present value would be $2985.06. For this reason only, we sustain the plaintiff's exception to the trial justice's decision of the defendant's motion for a new trial.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for a new trial, unless, on or before July 29, 1942, the plaintiff shall file in the office of the clerk of the superior court a remittitur of so much of the verdict as exceeds $16,985. If such remittitur shall be filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by such remittitur.

*William S. Flynn, Christopher J. Brennan,* for plaintiff.
*Hoyt W. Lark, Hart, Gainer & Carr,* for defendant.