CONRAD TURENNE *vs.* CARL G. OLSON CO.

MARCH 29, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

178

POWERS, J. This is an action of trespass on the case for negligence brought to recover damages for personal injuries allegedly resulting from the defendant's failure to effectively control two cylinders of propane gas for which it was responsible. The case was tried before a superior court justice sitting with a jury, and resulted in a verdict for the plaintiff. The trial justice thereupon entered a decision for the defendant on its motion for a directed verdict, to which the plaintiff duly excepted. Thereafter the defendant moved for a new trial which was granted and the plaintiff duly excepted thereto. The case is before us on the plaintiff's bill of exceptions to the granting of both motions and to a certain evidentiary ruling.

The record discloses that plaintiff was first employed by the Kent County Water Authority, hereinafter called the authority, in 1947 and was still in its employ when the case went to trial on April 28, 1961. His duties prior to his injuries consisted of operating a tractor and a jackhammer, laying water mains, and general maintenance work. In ad-

dition to these duties he was required each morning and evening to check the operations of the pumping stations owned and maintained by the authority. On June 23, 1954 at or about 9:40 p.m. he visited the No. 1 station, so called, which was situated in a wooded area off Wood street in Coventry, Rhode Island, and is about 1,000 yards from a grammar school and the playground connected therewith.

The record further discloses that the station consisted of a brick building 14 by 22 feet in width and depth, respectively, and 8 to 10 feet in height. It contained a pump, a 30-horsepower motor, a corrugated pipe through which chlorine was pumped into the water, a telephone, lights, a gauge clock to register the daily gallonage, and a small heater which was operated by propane gas supplied by defendant company. The heater was attached to a copper pipe or tubing which ran through the back wall of the building and was connected on the outside to two 100-pound cylinders of propane gas.

On the evening in question plaintiff unlocked and opened the door, went behind it to reach the light switch, smelled no gas, flicked the switch which apparently arced, and was immediately engulfed in flames. Attempting to leave the building, he was hurled through the open door for some thirty feet as a result of an explosion which followed within seconds of the combustion. The plaintiff was hospitalized for eight weeks, and sustained serious injuries with some permanent incapacity.

He testified that acting on the orders of his superintendent Arthur O. LeValley he removed the heater about the end of April or the first of May and took it to the main office of the authority for cleaning and repairs; that he called Carl Olson, president of the defendant company, and advised him the heater had been removed; and that Mr. Olson informed him that the company would remove the tanks at once. This conversation allegedly occurred within two or three days after the removal of the heater.

The plaintiff further testified that the only shutoff valve inside the building was attached to the heater; that with its removal the line to the cylinders was open; that before removing the heater he went outside and shut off the valve on the top of each cylinder; and that he visited the station every morning and evening from the time the heater was removed through June 23 without incident until the explosion on that evening. He testified that he knew or believed propane gas to be explosive, was not using it in his home at the time of the accident, and gave no further thought to the open line after Mr. Olson assured him that the cylinders would be removed.

Leonard Taylor, chief of the fire department in the town of Coventry at the time of the explosion, testified that when he arrived at the scene the door was open; that several cleaning rags were smoldering; that a flame was coming out of the copper tubing apparently at the point where the heater had been attached; and that he traced this tubing to the outside of the building where he found it attached to the cylinders referred to by plaintiff. He further testified that he found the valve on one of the cylinders closed but the other open, and that upon closing this valve the flame, which he described as seven or eight inches in length, was extinguished.

William G. Holland, an investigator for the National Insurance Group at the time of the incident, was engaged to investigate the explosion on behalf of the authority. He testified for plaintiff that Mr. Olson had informed him that defendant company had installed the pipe and cylinders; that the valves on the cylinders were exposed where anyone could get at them; that Olson had told him that he had not gotten around to covering the valves with a protecting hood; and that Olson admitted he had been notified to remove the cylinders approximately six weeks before the explosion. He further testified that when he flicked the light switch it arced or flashed and significantly that Le-

Valley had told him that the heater had been removed 24 to 48 hours before the explosion occurred.

David G. Cain, a chemical engineer, testified that propane gas is very flammable and definitely explosive; that it is odorless unless odorized with some substance such as amyl mercaptan; and that having a specific gravity of 1.5 most of such gas when released will settle to the floor, but some pockets will be formed. In response to a hypothetical question based on the evidence adduced, he said that in his opinion the explosion had resulted from the arcing of the light switch in combination with a sufficient concentration of propane gas.

At the conclusion of plaintiff's case, defendant company called its manager Herbert E. Swanson. He testified that Mr. Olson had retired from the active affairs of the company in 1951; and that Mr. Olson was quite deaf, using a hearing aid which was not very effective, never used the telephone, and had been in and out of hospitals about the time of the explosion. It was also his testimony that the investigator Holland had talked with him and not with Mr. Olson; that no call had been received from the authority to remove the cylinders until July 3, 1954, ten days after the explosion, at which time they were promptly removed; that the last tank or cylinder of propane gas had been delivered to the Wood street station on January 19, 1954; and that he had so informed Mr. Holland who remarked that this circumstance was "peculiar." The witness Holland had testified that when he examined one of the tanks on the day after the explosion there was gas in the cylinder.

Swanson further testified that the defendant company had not made the installation; that a substance was added to the gas to give it an odor resembling "rotten eggs" or "rotten turnip"; and that it was not customary to protect the cylinder valves against tampering by covering them with a locked hood for the reason that they should be readily accessible in the event of fire. This phase of Swanson's

testimony was corroborated by several bottled gas distributors, although a contrary view had been given by the investigator Holland.

John C. Talbot, defendant's bookkeeper, corroborated Swanson's testimony relative to Mr. Olson's retirement, deafness and date of delivery of the last cylinder.

Adelade Coutu, subpoenaed by defendant, testified that in February 1951 he had sold plaintiff a hot water heater and made a bottled gas installation at that time in plaintiff's home; that his firm continued to sell bottled gas to plaintiff for use at the latter's home; and that it was doing so in June 1954. This testimony flatly contradicted plaintiff's recollection that he had not used bottled gas in his home until after the June 23, 1954 explosion.

In rebuttal of the testimony of defendant's witness that Mr. Olson had retired from the business in 1951, plaintiff put in evidence a certified copy of defendant's 1956 annual report, signed by Mr. Olson and filed with the secretary of state. Mr. Swanson, however, had testified that despite his retirement president Olson had continued to sign checks and carry on some paper work.

After all of the evidence had been received defendant moved for a directed verdict. Acting on the authority of superior court rule No. 46, the trial justice reserved decision thereon and submitted the case to the jury which returned a verdict for plaintiff in the amount of $35,000.

The applicable provision of rule 46 is paragraph (a) thereof, and reads as follows:

> "Reservation of Decision on Motion. Whenever a motion for a directed verdict is made at the close of all the evidence, the Court may reserve decision upon said motion subject to a later determination and if decision is reserved the Court shall submit the action to the jury. When the jury is discharged the Court shall forthwith enter a decision on the motion reserved whether or not the jury returned a verdict."

Pursuant to said rule the trial justice then granted defendant's motion for a directed verdict. The effect thereof is set forth in paragraph (b), which reads as follows:

"Effect of Decision on a Motion for Directed Verdict. A decision granting the motion for a directed verdict shall have the effect of a directed verdict, as though the same had been ordered by the Court, returned by the jury and entered. After such a decision has been made no judgment shall be entered upon the verdict returned by the jury unless ordered by the Supreme Court. A judgment affirming the decision granting the motion to direct shall void any verdict theretofore entered on the pleadings to which the motion was directed. Nothing contained herein shall affect the right of any party to file motions concerning the verdict and to pursue appellate procedure on any exception."

The plaintiff thereupon duly excepted and defendant moved for a new trial.

The provisions of said rule relative to exceptions and motions for a new trial are contained in paragraphs (c) and (d) thereof and read as follows:

"Exceptions. An exception to a decision upon a motion for directed verdict may be taken immediately in open court or by filing the same in the office of the clerk within seven days after entry thereof.

"Motions for New Trial Unaffected. Nothing contained herein shall affect the right of a party to file and prosecute a motion for new trial as now by law provided; nor shall it affect the power of the Court to pass upon a motion for a new trial or to declare a mistrial or to pass a case."

The plaintiff contended that since the directed verdict superseded and suspended the jury's verdict, defendant was not an aggrieved party and therefore in no position to file its motion for a new trial. Notwithstanding this objection the trial justice granted defendant's motion and plaintiff duly excepted.

The plaintiff contends here, as he did before the superior court justice, that in the face of the directed verdict a motion for a new trial was not in order and that the trial justice erred in granting said motion. We are of the opinion that there is no merit in this contention.

It is clear from an analysis of the several provisions set forth in rule No. 46, *supra*, that its purpose is to bring all justiciable issues in the case before this court in one proceeding, thus tending to obviate unnecessary protracted litigation.

If in the trial of a case the trial justice is of the opinion that a motion for a directed verdict should be granted, it is possible for him to grant it on the proposition that there was no question of fact for the jury and at the same time complete the record by including the jury's verdict, to the end that both his decision on the motion and the jury's verdict may be reviewed by this court after a single trial, a procedure not heretofore available. In such circumstances it may well be that if the motion for a directed verdict should not have been granted, our review of the jury's verdict, predicated on the trial justice's granting of a motion for a new trial, would result in a final disposition of the case.

The plaintiff's first exception is to the overruling of his objection to the following question asked of defendant's manager Swanson: "What is commonly done by people when a gas burning appliance is disconnected?" The objection to the question having been overruled, Swanson replied, "First they go outside the premises and shut the valves off, naturally, then they go inside and plug the line."

The plaintiff contends that the trial justice erred in admitting this testimony for the reason that whatever others may have done in other instances is without probative force in the circumstances under consideration. In support thereof he calls our attention to the case of *Agulino* v. *New York,*

*N. H. & H. R.R.*, 21 R. I. 263. We are in full accord with the principle therein set forth, but in the view we take of plaintiff's remaining exceptions we are not persuaded that the error, if it were error, was prejudicial. This exception is overruled.

The plaintiff's second exception is to the ruling of the trial justice in granting defendant's motion for a directed verdict.

We are of the opinion that there is merit in this exception. In ruling on the motion the trial justice observed, "In this case the question of negligence would clearly be for the jury, but the question which troubles the Court greatly is whether or not the plaintiff was guilty of contributory negligence." In referring to the cases of *Floyd* v. *Turgeon*, 68 R. I. 218, and *Clarke* v. *Rhode Island Electric Lighting Co.*, 16 R. I. 463, he acknowledged that the question of contributory negligence was ordinarily a question of fact for the jury, but observed that in the cases referred to this court had indicated that in certain instances it could be a question of law for the court. He then commented that the evidence clearly showed that after removing the heater and leaving an open line plaintiff did nothing more to assure his safety. He then proceeded to observe that there were at least three other steps which plaintiff might have taken in the interest of due care: He could have plugged the open line, he could have removed the shutoff from the heater and have left it attached to the line, or he could have gone outside and closed the valves on the cylinders.

The court clearly overlooked plaintiff's uncontradicted testimony that he had taken this latter step before removing the heater. Moreover, viewed in the light most favorable to plaintiff as the trial justice was bound to do, it cannot be said that as a matter of law plaintiff failed to exercise due care when the testimony shows that after removing the heater plaintiff notified defendant that he had done so,

requested removal of the cylinders, and was assured by defendant who was responsible for them that the cylinders would be promptly detached from the installation.

If viewed in this light the cylinders had been removed, complete precautions would have been taken. Whether in the circumstances plaintiff had a right to rely on defendant's assurances was a question of fact for the jury and not a question of law. The plaintiff's second exception is sustained.

Notwithstanding plaintiff's contention that by the direction of a verdict the trial justice was without jurisdiction to grant the motion for a new trial, plaintiff has duly prosecuted an exception to the granting of the motion for a new trial and presses that exception before us. Having heretofore held that there is no merit in plaintiff's contention that the trial justice was powerless to grant a motion for a new trial we now consider whether or not the trial justice was clearly wrong, or overlooked or misconceived material evidence. Before proceeding to such consideration, however, we deem it advisable to comment upon the several counts contained in plaintiff's declaration.

The first two counts allege in substance that defendant made the installation of tanks and copper tubing to which the heater was attached; that it was thereby responsible for such installation, including the absence of a shutoff on the tubing, or pipe, inside the building; that there was no protective covering over the valves on the outside cylinders; that it was the duty of defendant to anticipate tampering, absent such protective covering; and that the premises were adjacent and in close proximity to a highway, school and schoolyard, which circumstances prompt anticipation of tampering.

We are of the opinion that as to these counts the trial justice did not err on the preponderance of the evidence and the credibility of the witnesses to which he referred in granting defendant's motion for a new trial.

A more complex question, however, arises in considering the trial justice's ruling as it relates to the third count of the declaration. This count incorporates the first two paragraphs of the first count and further alleges in effect that the failure of defendant to remove the cylinders when requested was a breach of its duty, and that the subsequent explosion resulting therefrom was the proximate cause of plaintiff's injuries.

The jury interrupted its deliberations to request further instructions and in response to inquiry from the court posed the following question: "Can the Olson Gas Company be held responsible for any negligence at all, if it has not been proved that they made the installation of the equipment complete? Count 3, paragraphs 1 and 2 refer to the installation, but paragraph 3 has nothing to do with the installation but rather the removal of the tanks." The trial justice thereupon gave the following instruction: "I am ruling that for the purpose of count three, in the matter of the notice, the removal of the tanks, whether or not Olson Company made the installation is not an essential element of proof."

This ruling became the law of the case and had the effect of narrowing the area of plaintiff's burden of proof as to the preponderance of the evidence when the trial justice exercised his independent judgment in passing on defendant's motion for a new trial.

In doing so the trial justice complied with the well-established rule as to the duty imposed upon him. He reviewed the pertinent evidence, passed upon the credibility of the witnesses, favorably to defendant, exercised his independent judgment, gave us the benefit of his reasons, commented that as to the matter of installation the evidence preponderated against the verdict, and concluded that the jury was motivated by sympathy for plaintiff whom he described as "a pathetic individual." Ordinarily when the trial justice has thus complied, his decision is entitled to great weight

and will not be disturbed by us unless it can be said that he was clearly wrong. *Hamilton Co.* v. *Rosen,* 53 R. I. 346.

However, the trial justice seems to have overlooked the narrow scope of plaintiff's burden resulting from his instructions to the jury relative to the third count of the declaration. The scope though narrowed does not result in lessening plaintiff's burden as to the weight of the evidence and the credibility of the witnesses. In this regard we cannot say that the trial justice was clearly wrong. The plaintiff's testimony, in the light of the contradiction arising from the testimony of Adelade Coutu, was subject to the maxim, "Falsus in uno, falsus in omnibus."

Plaintiff contends that in the seven years which had elapsed from the date of the explosion to the time of the trial, he might well have been confused as to the exact date when he began to use bottled gas in his home. It does not seem likely, however, that plaintiff could have been confused about an experience which extended for three and a half years, namely, from January 1951 to June 1954. Although the trial justice did not expressly refer to this in rendering his decision on the motion for a new trial, it seems clear that it was in his mind when he referred to the credibility of witnesses, for he specifically made mention of the maxim in his charge to the jury.

Moreover, the testimony of the witness Holland upon whom plaintiff relied did not in fact corroborate plaintiff's testimony that it was he who had requested Mr. Olson to remove the cylinders. Holland testified that Arthur O. LeValley, plaintiff's supervisor, told him that he, LeValley, had requested the removal of the cylinders and that the heater had not been removed until 24 or 48 hours prior to the explosion.

This constituted all of the testimony favorable to plaintiff on the removal of the cylinders and notice thereof to defendant. Against this testimony was that of defendant's manager Swanson and the bookkeeper that Olson never used

the telephone because of his deafness; that no request to remove the cylinders was received either orally or in writing until July 3, 1954; and that it was Swanson and not Olson to whom Holland talked, during which conversation no mention was made of a request to remove the cylinders. On this state of the evidence we cannot say that the trial justice was clearly wrong in finding a preponderance against the verdict, even on the narrow issue of the allegations contained in the third count of the declaration and the law of the case applicable thereto. This exception is overruled.

The plaintiff's exception to the granting of the defendant's motion for a directed verdict is sustained, his other exceptions are overruled, and the case is remitted to the superior court for a new trial.

*Gunning & LaFazia, Raymond A. LaFazia, Edward L. Gnys, Jr., Bruce M. Selya,* for plaintiff.

*James O. McManus, William I. Matzner,* for defendant.