**Annie Jill MASSART, By and Through Her Parents and Legal Guardians, Edward MASSART and Bernice Massart**

v.

**TOYS R US, INC.**

**No. 97–37–Appeal.**

Supreme Court of Rhode Island.

March 13, 1998.

Robert D. Goldberg, for Plaintiff.

Stephen B. Lang, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG and FLANDERS, JJ.

## OPINION

PER CURIAM.

This is a premises-liability case concerning the sufficiency of negligence evidence in a slip-and-fall situation. The plaintiff, Annie Jill Massart (Annie), by and through her parents and legal guardians, Edward Massart and Bernice Massart, appeals from the entry of a Superior Court judgment in favor of the defendant, Toys R Us, Inc. (Toys R Us). The parties were ordered to show cause why this case should not be summarily decided. No cause having been shown, we proceed to decide the appeal at this time.

The guardian/plaintiffs filed a Superior Court complaint against Toys R Us, alleging that Annie suffered injuries, including a fractured right ankle, when she fell in the Warwick Toys R Us store on December 29, 1993. The plaintiffs contended that Toys R Us knew or should have known of the unsafe condition on its premises that caused her to fall. After a trial before a Superior Court justice and a jury, but before the case was submitted to the jury, the trial justice granted Toys R Us's motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. On appeal, plaintiffs contend that there was sufficient evidence of negligence to submit the case to the jury. In addition, plaintiffs argue that the trial justice erred in allowing defendant to present evidence that Annie had fractured her other ankle in an unrelated incident two years prior to her fall in the Toys R Us store.

Annie, who was eleven years old at the time of trial and eight years old when the slip and fall occurred, testified that she and her mother went to the Toys R Us store in

Warwick on the night of December 29, 1993 in order to buy slides for a microscope that she had received as a Christmas present. She testified that there were long lines at the cash registers and that her mother decided to wait in line while she remained in the toy aisle. As Annie began to make her way toward her mother after her mother had beckoned to her, the youngster tripped over the base of a small basketball hoop and fell to the floor. After she fell, she noticed that the hoop was on its side, with the bottom of the structure jutting out from one of the side aisles into the main aisle. Annie stated that she did not see the hoop until after she fell.

Annie's mother, Bernice Massart (Massart), testified that the Toys R Us store was "a little chaotic" on the evening she and her daughter visited the store. She stated that there was not much help in the store at the time and that she took her purchases to the register to wait in line while Annie remained in the aisle, looking at other toys. After she paid, she signaled to Annie that it was time to leave. Annie then hobbled up to her and told her that she had just fallen and hurt her ankle. Massart took Annie home and put her to bed for the night. The next morning Annie could not walk, and her ankle was completely swollen on both sides. Indeed, upon taking her daughter to see a physician later that morning, Massart learned that Annie had fractured her ankle in the area of her growth plate.

Massart also testified that she called the store manager at Toys R Us later that day and told him what had happened. According to Massart, when she mentioned the basketball stand, the manager responded that he knew the display she was talking about, saying, "I know exactly what you're talking about. I know where that display is. They were going to fix it." She stated that the manager asked her to come to the store and sign some papers; however, instead of doing that, the mother telephoned her attorney.

Keith Martel (Martel), the store manager for Toys R Us in Warwick, testified that neither he nor any other manager had taken a call from Massart. Martel stated that if a call had been received by the store indicating that someone had been injured, an entry would have been made in an incident log to document the injury. But no such entry had been made. Martel also testified that all store employees are trained to pick up loose pieces of merchandise as they come across them in the aisles. On cross-examination, however, Martel acknowledged that toys regularly fell to the floor during that season of the year.

The trial justice determined that there was no evidence that Toys R Us knew or should have known that a dangerous and unsafe condition existed at its Warwick store on the night in question before Annie injured herself. The trial justice noted that neither Annie nor her mother testified that they saw the basketball hoop on the floor prior to Annie's fall. There also was no evidence, the trial justice concluded, of actual or constructive notice to Toys R Us of the condition that caused Annie's injury.

In reaching this decision, the trial justice relied upon *Gleason v. Almac's, Inc.*, 103 R.I. 40, 234 A.2d 350 (1967). The plaintiff in that case sustained injuries when she fell in the defendant's supermarket. *Id.* at 40–41, 234 A.2d at 350. This court reversed a denial of a motion for a directed verdict in favor of the defendant on the ground that the testimony of the plaintiff there and of the store manager was insufficient to establish the store's liability. *Id.* at 42–45, 234 A.2d at 351–52. The plaintiff had testified that she did not see any objects on the floor before she fell but noticed a roll of film between her feet after her fall. *Id.* at 41, 234 A.2d at 350. The store manager testified that rolls of film, such as the one described by the plaintiff, were displayed on racks near the registers. But he was not asked what steps were taken to keep the store's premises in a safe condition for customers. *Id.* This court concluded that there was no evidence from which the jury could conclude that the roll of film had been on the floor because of some negligent act on the part of the store or because the defendant had negligently failed to remove it from the floor after having had actual or constructive notice of its dangerous location. *Id.* at 42, 234 A.2d at 351.

The plaintiffs contend that *Gleason* is distinguishable from the case at bar. Here,

plaintiffs argue, there was sufficient evidence from which the jury could have concluded that Toys R Us was negligent. Specifically plaintiffs assert that Massart's testimony that the store was chaotic and that there were boxes in the aisles, together with Martell's admission that items regularly fell to the floor, support an inference of negligence on the part of Toys R Us. This is especially so, plaintiffs contend, when these facts are considered in light of an alleged admission by a Toys R Us store manager during a telephone conversation with Annie's mother on the day after the accident in which the unidentified manager stated that he knew of the display and that "[t]hey were going to fix it."

We are of the opinion that the trial justice did not err in concluding that a jury would have had to engage in speculation to draw the conclusion that Toys R Us was negligent on the basis of the above testimony. The plaintiffs presented no testimony about how long the hoop had been on the floor before the accident or whether an employee had seen the hoop there and failed to pick it up. The alleged admission of a Toys R Us manager that as of the next day he was aware of the display and that "they were going to fix it" is not enough to indicate that Toys R Us knew of the fallen hoop *before* the accident occurred.

The plaintiffs rely upon and *Casador v. First National Stores, Inc.,* 478 A.2d 191 (R.I.1984), *Cutroneo v. F.W. Woolworth Co.,* 112 R.I. 696, 315 A.2d 56 (1974), and *Cote v. Arrighi,* 91 R.I. 289, 162 A.2d 797 (1960), in support of their contention that there was sufficient evidence of negligence to submit the case to the jury for consideration. In all these cases this court reversed directed verdicts in favor of the defendants, finding that sufficient evidence existed to show that the defendants knew or should have known of an unsafe condition on their premises. In *Cutroneo* the court concluded that a person of average intelligence would know that a smooth, non-abrasive, sloping tile floor is slippery when it is wet and that it constitutes a hazard. 112 R.I. at 700, 315 A.2d at 59. In *Casador* the court found that the defendant's failure to place curbing along a walkway in

front of the store in order to keep vehicles away from the walkway constituted a defective condition and was evidence of the defendant's negligence. 478 A.2d at 194. But in both *Casador* and *Cutroneo* the court determined that permanent conditions, about which the owner/occupier knew or should have known, were defects in the premises and that the owner/occupier's failure to change these conditions was sufficient evidence of negligence to overcome a directed verdict. *Casador,* 478 A.2d at 194; *Cutroneo,* 112 R.I. at 700–01, 315 A.2d at 59. And in *Cote* the court concluded that there was sufficient evidence to give rise to a reasonable inference that a clothespin, which caused the plaintiff's fall, had been on the defendant's premises for some substantial period. 91 R.I. at 292, 162 A.2d at 799.

In contrast the condition that caused Annie to fall was not a permanent defect of which Toys R Us could be charged with notice. Nor was there any evidence to show that the fallen basketball hoop had been on the floor for any length of time. Thus, as previously stated, there was a dearth of evidence to indicate that before Annie's accident Toys R Us knew or should have known of the fallen hoop or that its mere presence on the floor before the accident necessarily indicated negligence on its part. Although "[a] plaintiff need not eliminate all other possible causes in order to establish by circumstantial evidence the probability of the defendant's negligence," *DiGiovanni v. Shaw's Supermarkets, Inc.,* 693 A.2d 1025, 1026 (R.I.1997), a plaintiff must introduce evidence from which a reasonable jury could conclude that the defendant more probably than not was negligent. We hold that the trial justice did not err in concluding that the evidence here failed to satisfy this standard.

The second issue raised by the plaintiffs is that the trial justice erred in admitting evidence that Annie had previously fractured her other ankle. However, given our decision to affirm the trial justice's ruling with respect to the sufficiency of negligence evidence, we need not address the question of whether the trial justice erred in admitting this evidence.

For these reasons the plaintiffs' appeal is denied, and the judgment below is affirmed.

BOURCIER and GOLDBERG, JJ., did not participate.