Michael Moura et al.                          :

v.                          :

Mortgage Electronic Registration Systems,    :
            Inc., et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2013-107-Appeal.
(KC 11-341)

Michael Moura et al.        :

v.        :

Mortgage Electronic Registration Systems,  :
Inc., et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** The plaintiffs, Michael Moura and Margaret Moura, appeal from summary judgment entered against them and in favor of the defendants, Mortgage Electronic Registration Systems, Inc. (MERS), Accredited Home Lenders, Inc., Foreclosure Management Co., Vericrest Financial, Inc., Accredited REO Properties, LLC, and Deutsche Bank National Trust Company, as Trustee on behalf of the LSF MRA Pass-Through Trust. This case came before the Supreme Court for oral argument on April 8, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

On June 8, 2007, the Mouras purchased a home at 114 Betsy Williams Drive in Warwick. To finance the transaction, Michael Moura executed a note, payable to Accredited Home Lenders, in the amount of $206,250. On the same day the Mouras signed the note, Accredited Home Lenders endorsed in blank an "allonge"[1] on the property.[2] The note was secured by a mortgage on the property that named plaintiffs as the mortgagors and MERS as the mortgagee, acting as a "nominee for Lender and Lender's successors and assigns."[3] Both the note and the mortgage designated Accredited Home Lenders as the Lender. Significantly, the mortgage further provided that "[b]orrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, * * * with the Statutory Power of Sale." The mortgage was recorded in the land evidence records of the City of Warwick on June 13, 2007.

---

[1] An "allonge" is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." NV One, LLC v. Potomac Realty Capital, LLC, 84 A.3d 800, 803 n.4 (R.I. 2014) (quoting Black's Law Dictionary 88 (9th ed. 2009)).

[2] This action by Accredited Home Lenders "does not identify a person to whom it makes the instrument payable." See Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 530 n.3 (R.I. 2013) (quoting G.L. 1956 § 6A-3-205 cmt. 2). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id. (quoting § 6A-3-205(b)).

[3] On the mortgage, the notary states "[o]n this 8th day of June 2006"; however, we are confident that this is simply an error by the notary. Under "Definitions" on the first page of the mortgage, the following is written: "'Security Instrument' means this document, which is dated June 8, 2007 together with all Riders to this document." The trial justice made a similar conclusion and also aptly noted that under G.L. 1956 § 34-11-1, a conveyance of lands by way of mortgage that is delivered is nonetheless valid and binding even if not acknowledged or recorded. The plaintiffs have not challenged that the mortgage was not delivered.

On November 30, 2009, MERS assigned the mortgage to Deutsche Bank National Trust Company (Deutsche Bank) "as Trustee on behalf of the LSF MRA Pass-Through Trust" (the Trust). The assignment was signed by "Hal Bartow, AVP" and notarized in Oklahoma.[4] This assignment was also recorded in the land evidence records in Warwick. In an affidavit filed in support of defendants' motion for summary judgment, Eduardo Asher, Assistant Vice President of Vericrest Financial, attested that Vericrest became the attorney-in-fact for Deutsche Bank on or about June 26, 2009.[5]

There seems to be little dispute that in July 2009, the Mouras stopped making their payments as set forth in the note. On March 1, 2010, Deutsche Bank foreclosed on the property, and, at a subsequent foreclosure sale, Accredited REO Properties, LLC, purchased the property for $125,000. In July 2010, Vericrest executed a foreclosure deed on behalf of Deutsche Bank, which Accredited REO subsequently recorded with the City of Warwick.

On March 14, 2011, plaintiffs filed a two-count complaint seeking declaratory judgment and injunctive relief. In their prayers for relief, plaintiffs asked the court to quiet title to the property, and they sought a nine-point declaration, including orders declaring that plaintiffs were the owners of the property as a matter of law, that the foreclosure sale, conveyance, and assignment were void, and that defendants pay plaintiffs' attorney's fees. On November 8, 2012,

---

[4] Attached to defendants' motion for summary judgment is a document entitled "Corporate Resolution." This document illustrates that, on April 2, 2008, several individuals, who were listed on separate sheets of paper, were employees of Vericrest Financial and were appointed as vice presidents of MERS with the authority to "execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owners of such mortgage loan." Hal Bartow was one of those Vericrest employees appointed as a vice president of MERS.

[5] In a document entitled "Limited Power of Attorney" submitted to the Superior Court in support of the motion, Deutsche Bank appears to have appointed Vericrest Financial on June 24, 2010 as the Trust's attorney-in-fact and servicer for "any of the mortgages or deeds of trust." This document references an April 1, 2009 "Servicing Agreement" between Deutsche Bank and Vericrest, and indicates that in the servicing agreement Vericrest is the "Servicer."

- 3 -

after both sides had conducted discovery, defendants filed a motion for summary judgment, alleging that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. In addition to other documentation, defendants filed two affidavits to support the motion: one from Asher and another from Dean Ponte, a licensed auctioneer who conducted the foreclosure sale on behalf of Vericrest. To support their objection to the motion, plaintiffs filed a counter-affidavit from Michael Moura. The parties subsequently agreed to waive oral argument, and a justice of the Superior Court rendered a decision on February 27, 2013.

The trial justice considered each of the six arguments plaintiffs presented in opposition to summary judgment and found that none presented a genuine issue of material fact. During his consideration of the arguments, the trial justice addressed defendants' argument that plaintiffs lacked standing to challenge the assignment of the mortgage because the Mouras contended that Bartow lacked authority to assign the mortgage on behalf of MERS. The trial justice stated that he did not believe plaintiffs had standing to make such a challenge, but that even if he were to find that they did, he nonetheless concluded that plaintiffs' argument was without merit because the assignment was signed by Bartow and because the certification that he was a vice president of MERS was acknowledged by a notary. That notarized assignment was recorded in the land evidence records, which, in the trial justice's opinion, amounted to "presumptive evidence" that Bartow had the authority to sign, an assertion that plaintiffs had not challenged with competent evidence. After considering the submissions of the parties, the trial justice granted the motion for summary judgment. The plaintiffs filed a timely appeal to this Court.[6]

---

[6] In April 2013, this Court decided Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069 (R.I. 2013), which addressed several of the arguments the Mouras have presented on appeal. Consequently, on December 17, 2013, when the Mouras came before a single justice of this Court pursuant to Article I, Rule 12A(3) of the Supreme Court Rules of Appellate Procedure,

## II

## Standard of Review

We review a trial justice's granting of summary judgment <u>de novo</u>. <u>Mruk v. Mortgage Electronic Registration Systems, Inc.</u>, 82 A.3d 527, 532 (R.I. 2013). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, '[w]e view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,] we will affirm the judgment.'" <u>Sullo v. Greenberg</u>, 68 A.3d 404, 406-07 (R.I. 2013) (quoting <u>Sacco v. Cranston School Department</u>, 53 A.3d 147, 150 (R.I. 2012)). "Although summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" <u>Id.</u> at 407 (quoting <u>Mutual Development Corp. v. Ward Fisher & Co.</u>, 47 A.3d 319, 323 (R.I. 2012)). "[T]he nonmoving party * * * cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." <u>Mruk</u>, 82 A.3d at 532 (quoting <u>Daniels v. Fluette</u>, 64 A.3d 302, 304 (R.I. 2013)). Demonstrating mere factual disputes will not defeat summary judgment; "the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

---

plaintiffs were directed to file a supplemental memorandum within twenty days discussing the effect of <u>Bucci</u> on the issues raised in this appeal. The plaintiffs' counsel failed to comply with the order of this Court and never filed the required supplemental memorandum. At oral argument, plaintiffs' counsel was unable to articulate any reasonable explanation as to why he did not adhere to the order. The general, plenary supervisory power of this Court authorizes us to dismiss an appeal if a party fails to follow a duly issued order. <u>See</u> <u>Santos v. Smith</u>, 99 R.I. 430, 431-32, 208 A.2d 524, 525 (1965) (declining to dismiss certiorari petition for not complying with a statutory provision, but retaining authority to decide differently in the future). Although we choose not to dismiss this appeal for noncompliance with the Court's order, we are nevertheless dismayed by counsel's unexplained disregard for our directive.

- 5 -

**Discussion**

The plaintiffs discharge a volley of arguments on appeal that they contend demonstrate the trial justice's error in granting summary judgment. First, plaintiffs contend that the trial justice erred when he allowed Asher's affidavit into evidence. Second, plaintiffs maintain that there is a material issue of fact surrounding the validity of the travel of the note and the mortgage. Third, plaintiffs argue that the trial justice erred when he found that MERS had properly assigned the mortgage to Deutsche Bank. Finally, plaintiffs claim that the trial justice erred when he found that the foreclosure sale had been lawfully noticed and conducted. In our opinion, these arguments are unpersuasive and without merit.

The Mouras begin by parsing the trial justice's bench decision into eighteen alleged errors that the trial justice committed in granting summary judgment. Of note, for our purposes, plaintiffs take issue with the trial justice's statement that he did not believe plaintiffs had standing to challenge the assignment even though he went on to analyze the argument assuming they did have standing. Indeed, although standing was contested below, before this Court, defendants make it clear that they do not dispute plaintiffs' standing to challenge the assignment.

We pause to note, however, that we agree with the trial justice that standing was problematic in this case. This Court first addressed the issue of a plaintiff's standing to challenge an assignment of a mortgage in Mruk, 82 A.3d at 532. In Mruk, we created an exception to the general rule that third parties do not have standing to challenge a contract and held that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose." Id. at 536. However, we cautioned that this holding on standing was to be narrowly construed

and limited only to those situations in which a mortgagor challenges an "'invalid, ineffective, or void' assignment of the mortgage." Id. (quoting Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013)). More specifically, we agreed with the First Circuit that mortgagors do not have standing to challenge "shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Id. (quoting Culhane, 708 F.3d at 291).

Earlier this year, in a case based on Massachusetts law, the First Circuit expounded upon the difference between standing to challenge a void assignment and an assignment that is merely voidable. Wilson v. HSBC Mortgage Services, Inc., 744 F.3d 1, 9 (1st Cir. 2014). The court said that a mortgagor would lack standing to challenge an assignment that is voidable because "even successfully proving that the assignment was voidable would not affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action." Id. A "void" contract, the court explained, was a "nullity," "incapable of confirmation or ratification." Id. (quoting Allis v. Billings, 47 Mass. 415, 417 (1843)). On the other hand, a "voidable" contract affects the rights of one party and may be either ratified or rescinded at that party's election. Id. Moreover, the court did not take as "gospel" the mortgagor's bald assertion that the assignment was void, but analyzed the materials before the court to determine whether the assignment was properly categorized as void or voidable. Id. at 10. The mortgagors in Wilson, 744 F.3d at 11, claimed the assignment was void and supported that assertion with allegations that bear a striking resemblance to the position taken here by the Mouras. Ultimately, the court in Wilson determined that the mortgagors did not have standing to challenge the assignment because they had not proven that the assignment was void. Id. at 14. Although the issue of standing is a threshold inquiry that the Court may decide before reaching the merits of a

- 7 -

claim, <u>Narragansett Indian Tribe v. State</u>, 81 A.3d 1106, 1110 (R.I. 2014), because standing was neither briefed nor argued by the parties and was assumed to be present by the trial justice, we too will credit plaintiffs with standing and will proceed to decide the case on its merits. However, in principle, we find the reasoning in <u>Wilson</u> to be persuasive.

The first argument before us is plaintiffs' claim that the trial justice erred in admitting the affidavit of Eduardo Asher. The plaintiffs claim that Asher, as an assistant vice president of Vericrest, did not offer any evidence of a contractual relationship between Vericrest and any other party. Furthermore, plaintiffs claim that Asher's statement in paragraph one of the affidavit is insufficient to satisfy Rule 803(6) of the Rhode Island Rules of Evidence.[7] It should be noted that Rule 56(e) of the Superior Court Rules of Civil Procedure requires supporting and opposing affidavits to be made on personal knowledge, setting forth facts admissible into evidence, and affirmatively showing that the affiant is competent to testify. The plaintiffs challenge the admissibility of the facts set forth in the Asher affidavit because the affiant claims that Vericrest is <u>a</u> mortgage servicer, but never claims to be <u>the</u> servicer of plaintiffs' loan. According to plaintiffs, if Vericrest is not the servicer of their loan, then Asher is testifying to

---

[7] Rule 803(6) of the Rhode Island Rules of Evidence states:

> "<u>Records of Regularly Conducted Activity</u>. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

records not prepared or kept by Vericrest, which means Asher's statements are not based on his personal knowledge. Although it is true that Asher does not say that Vericrest is the servicer of the note, that does not cause us to conclude that plaintiff's position is sound. Asher swears that the claims in his affidavit are based on personal knowledge, that Vericrest is a mortgage servicer, and that the note is held by Vericrest. These three statements, along with others, convince us that the affidavit was proper because Asher's averments satisfy the strictures of Rule 56(e). See Textron, Inc. v. Aetna Casualty and Surety Co., 723 A.2d 1138, 1144 (R.I. 1999) (discussing sufficiency of personal knowledge presented in affidavits in support of motion for summary judgment).

Next, the Mouras assert that defendants cannot prove a legal foreclosure occurred because the evidence submitted did not demonstrate the presence of a valid travel of the note and mortgage. To support this argument, plaintiffs present a disorganized mélange of conclusory statements that purportedly undergird a claim that there is a genuine issue of material fact. We, however, are convinced that the record presents a clear chain of title beginning with Accredited Home Lenders and concluding with REO Properties. The evidence and supporting documents, including the Asher Affidavit, establish that Michael Moura signed the note, that the note was signed in favor of Accredited Home Lenders, which endorsed an allonge in blank, and that it was subsequently held by Vericrest Financial on behalf of Deutsche Bank. Further, MERS properly assigned the mortgage through its duly authorized representative to Deutsche Bank, and the assignment was recorded with the City of Warwick.

To avoid summary judgment, the Mouras, as the nonmoving party, had the burden of producing competent evidence to elucidate a genuine and material factual dispute. See Sullo, 68 A.3d at 407. In the counter-affidavit submitted by plaintiffs, Michael Moura attests that he was

told by MERS that Bartow, who signed the assignment from MERS to Deutsche Bank, was never an employee of MERS. Moura further swears that Bartow is a known "robosigner," and he attached a list that includes Bartow among other known "robosigners" from the South Essex District Registry of Deeds in Massachusetts. However, in the papers submitted to the trial justice and to this Court, the Mouras do not develop these diffuse claims into a cogent argument, explain their significance, or even make further mention of Bartow. Mere allegations and conclusions will not create a factual dispute sufficient to defeat summary judgment. Mruk, 82 A.3d at 532.

The plaintiffs' remaining arguments challenge the assignment of the mortgage to Deutsche Bank. First, the Mouras maintain that MERS did not have the authority to assign the mortgage. Second, the plaintiffs contend that the foreclosure was invalid because there were no valid assignments that would have granted the proper interest to foreclose. This Court already has addressed the issue of the authority of MERS to assign a mortgage in Bucci v. Lehman Brothers Bank FSB, 68 A.3d 1069 (R.I. 2013). Because the plaintiffs did not distinguish their arguments from our decision in Bucci, as they were ordered to do, we need not, and do not, address those arguments further.

## IV

### Conclusion

For the foregoing reasons, we affirm the grant of summary judgment in favor of the defendants. The record shall be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Michael Moura et al. v. Mortgage Electronic Registration Systems, Inc., et al.

**CASE NO:**      No. 2013-107-Appeal.
(KC 11-341)

**COURT:**      Supreme Court

**DATE OPINION FILED:**   May 16, 2014

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  George E. Babcock, Esq.

For Defendants:  Dean J. Wagner, Esq.