May 22, 2018

Karen Dent                          :

v.                          :

PRRC, Inc., d/b/a Price Rite.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2016-129-Appeal.
(PC 13-5924)
(Dissent begins on Page 13)

Karen Dent                              :

v.                              :

PRRC, Inc., d/b/a Price Rite.                :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on December 5, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The plaintiff, Karen Dent (plaintiff or Dent), appeals from a final judgment granting the motion of the defendant, PRRC, Inc. d/b/a Price Rite (defendant or Price Rite), for summary judgment on count one of the plaintiff's complaint, and also granting the defendant's motion to dismiss the remaining four counts.  After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument.  We affirm in part and vacate in part the judgment of the Superior Court.

### Facts and Travel

On August 22, 2012, plaintiff was shopping with her husband at the Price Rite store located at 325 Valley Street in Providence. The plaintiff's husband placed two bottles of a

beverage identified as Sunny Delight[1] into their shopping cart. The product was displayed in aisle six of the store, and plaintiff then separated from her husband to locate a restroom. Shortly thereafter, plaintiff returned to aisle six in search of her husband, but she slipped on a "brownish oily substance" and was immobilized. Meanwhile, a porter[2] was mopping up liquid in an adjacent aisle.[3] Coincidentally, plaintiff's husband noted that one of the bottles of Sunny Delight in his shopping cart had been leaking, and that some of the contents of the bottle had spilled out as he continued to shop.

David Walmsley (Walmsley), a store manager at Price Rite, testified at a deposition that the Sunny Delight bottles arrive at the store in boxes and are then transported on pallets to the area of the store where they will be displayed. Also, Jeffrey Sparfven (Sparfven), a former Price Rite manager, testified at his deposition that the boxes arrive from the warehouse shrink-wrapped in cellophane and are unwrapped and inspected by a manager to verify that the quantity and quality of the items are correct.[4] According to Sparfven, the receiving manager then shrink-wraps the boxes and places them in storage until they are needed, at which point a store employee once again removes the shrink-wrap with a box cutter. Walmsley also testified that, typically, fifty boxes of Sunny Delight, with eight bottles in each box, are stacked on top of each other on the wooden pallet. According to Walmsley, none of the Price Rite employees are asked

---

[1] Sunny Delight, also referred to as "SunnyD," is an orange-colored soft drink marketed as an orange juice-based product and offered in a variety of flavors.

[2] A porter is an employee of Price Rite whose duty it is to maintain the floors and the restrooms of the store.

[3] A video, taken on Price Rite's security camera, captures the porter mopping the aisle adjacent to aisle six and plaintiff's slip-and-fall accident. However, the video is not time-stamped and is not continuously streaming, because the camera records only if it is triggered by movement in the aisle.

[4] According to Sparfven, the cellophane is cut open using a box cutter.

to inspect products for defects before they are sold in the store.  Finally, Walmsley explained that the store's protocol for spills is: "If [an employee] see[s] something on the floor, the protocol is for them to stand at that spot until they can get [the] attention of a porter, and they stay there until the porter arrives."

On November 20, 2013, plaintiff filed a three-count complaint against defendant; she subsequently amended that complaint in February 2016.  The amended complaint consisted of five counts: negligence; breach of contract; "mode of operation"; failure to warn; and breach of the implied warranties of merchantability, fitness for use, and fitness for a particular purpose. Prior to the filing of plaintiff's amended complaint, defendant had moved for summary judgment on the negligence claim, arguing that Price Rite could only be liable under a theory of negligence if it knew or should have known that the dangerous condition existed for a sufficient period of time within which to remedy the dangerous condition, and that not enough time had elapsed such that defendant could be liable under the theory of constructive notice.  The plaintiff objected to the motion for summary judgment, arguing that defendant had to have known of the dangerous condition because a porter was cleaning up the spill, and that there was no question that the bottle was defective.  After a hearing, the trial justice granted defendant's motion with respect to the negligence count, stating:

> "[A] plaintiff who has fallen must present evidence to prevail against the owner of the premises showing that he or she fell because of an unsafe condition on the premises of which the defendant was or should have been aware and that the condition existed for a long enough period of time so the owner or occupier of the premises should have taken steps to correct the condition * * *.
> "Dent has failed to show that there was any notice given to the defendant. * * * *[O]bviously it wasn't so obvious that it would call attention to somebody*." (Emphasis added.)

- 3 -

After plaintiff was granted leave to file an amended complaint, defendant moved to dismiss the remaining counts under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. In its motion, defendant argued that: (1) because the parties were not in a contractual relationship, the breach-of-contract claim should be dismissed; (2) mode of operation is not a cause of action, but merely a means of proving notice with respect to negligence, a count which had already been dismissed; (3) the duty-to-warn claim should fail because the court had already decided that Price Rite did not have notice of the leaking bottle; and (4) the breach-of-warranty claims should be dismissed because no sale had occurred. In response to defendant's motion, plaintiff filed a motion for reconsideration of the order granting summary judgment,[5] and also moved for summary judgment under a theory of strict product liability. A hearing was held in March 2016 on defendant's motion to dismiss the remaining counts, plaintiff's Rule 60 motion, and plaintiff's motion for summary judgment.[6] The trial justice granted defendant's motion to dismiss counts 2 through 5 of plaintiff's complaint, and accordingly denied both of plaintiff's motions. The plaintiff timely appealed.

On appeal, plaintiff argues that the question of whether defendant knew or should have known of the dangerous condition from the broken bottle is a disputed issue of material fact, and therefore summary judgment should not have been granted. As to her breach-of-contract claim, plaintiff argues that defendant has a responsibility to maintain the property in a safe manner for its intended business invitee guests. Turning to the mode-of-operation count, plaintiff argues that this Court should adopt mode of operation as a distinct cause of action. As to her failure-to-

---

[5] While there is no procedural vehicle for a motion for "reconsideration," this Court considers such motions under Rule 60 of the Superior Court Rules of Civil Procedure, entitled "Relief from Judgment or Order."

[6] An original transcript of this hearing was not transmitted to this Court on appeal.

warn claim, plaintiff argues that a retailer has a duty to warn consumers of dangerous or defective conditions that it knows of, or reasonably should have known of, and therefore the trial justice erred in dismissing this claim. Finally, plaintiff contends that her breach-of-warranty claims were properly pled; she therefore asks this Court to reverse the trial justice and enter summary judgment in her favor on this count. We address these issues seriatim.

## Standard of Review

This Court reviews a trial justice's decision granting summary judgment *de novo. See Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012); *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 424 (R.I. 2009). It is well established that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 129 (R.I. 2013)). Moreover, "[s]ummary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" *Sola*, 45 A.3d at 506 (quoting *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005)). This Court has held that "complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by fact finding at the trial court * * *." *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013); *see Martin v. Marciano*, 871 A.2d 911, 915 (R.I. 2005).

In passing on a Rule 12(b) motion to dismiss, "this Court applies the same standard as the trial justice." *Narragansett Electric Co. v. Minardi*, 21 A.3d 274, 278 (R.I. 2011). "We thus are confined to the four corners of the complaint and must assume all allegations are true, resolving any doubts in plaintiff's favor." *Id.* Additionally, "[a] motion to dismiss may be granted only 'if

- 5 -

it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts[.]'" *Id.* (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I. 2000)).

## Analysis

### Negligence

It is well-settled jurisprudence that "to prevail on a claim of negligence 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273, 1276 (R.I. 2012) (quoting *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009)). Specifically, with respect to a slip-and-fall claim, a plaintiff "must present evidence of an unsafe condition on the premises of which the defendant was aware or should have been aware, and that the condition existed for a long enough time so the owner of the premises should have taken steps to correct [it]." *Id.* (quoting *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002)); *see also Barone v. Christmas Tree Shop*, 767 A.2d 66, 68 (R.I. 2001); *Massart v. Toys R Us, Inc.*, 708 A.2d 187, 189 (R.I. 1998). This burden is not insurmountable, and may be established through circumstantial evidence.

It is undisputed that defendant, in its capacity as a business owner, owed a legally cognizable duty to plaintiff, a customer in its retail establishment. Common law premises liability "imposes an affirmative duty upon owners and possessors of property[ ] to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have

- 6 -

discovered, the dangerous condition." *Cooley v. Kelly*, 160 A.3d 300, 304 (R.I. 2017) (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 935 (R.I. 2003)). This Court has consistently held that:

> "[T]he common law distinctions between invitees and licensees have long been abolished. * * * Instead, our courts apply a reasonableness test to premises liability actions, requiring the determination of whether a landowner has satisfied his or her 'affirmative duty to exercise reasonable care for the safety of all people reasonably expected to be upon the premises.'" *Phelps v. Hebert*, 93 A.3d 942, 946-47 (R.I. 2014) (quoting *Bucki v. Hawkins*, 914 A.2d 491, 495 (R.I. 2007)).

Having overcome the hurdle to establish that defendant owed plaintiff a legally cognizable duty, plaintiff was then entitled to a factual determination with respect to whether defendant had notice, actual or constructive, of the dangerous condition on its premises—which if answered in the affirmative, would amount to negligence. *See Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 750 (R.I. 2013). This Court has adhered to the long-standing principle that "[g]enerally, the question of negligence is a question of fact to be determined by the jury * * *." *Clarke v. Rhode Island Electric Lighting Co.*, 16 R.I. 463, 465, 17 A. 59, 60 (1889); *see also Berard,* 64 A.3d at 1218; *Volpe v. Gallagher*, 821 A.2d 699, 705 (R.I. 2003) ("[I]t is still the function of the jury to determine the existence of those predicate facts that trigger the presence of the legal duty.").

We note at the outset of this analysis that summary judgment in accordance with Rule 56 is issue determination, not issue resolution. In carrying out this function, we do not deem it necessary to view the voluminous video surveillance evidence or scour deposition testimony or indeed to weigh that evidence to determine whether the evidence, viewed in its totality, and in the light most favorable to plaintiff, leads us to conclude, as we do unequivocally, that this case presents us with genuine issues of material fact that are committed to the factfinder.

At the summary-judgment hearing, plaintiff's negligence count hinged on whether defendant knew or should have known about the presence of liquid on the floor that caused plaintiff's fall. This is a question of fact for the jury, not for the trial justice at the summary-judgment stage. *See Mead v. Papa Razzi Restaurant*, 840 A.2d 1103, 1108 (R.I. 2004). We note that, in general, "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I. 2005) (quoting *Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir. 1965)). This Court "frown[s] upon the disposition of negligence claims by summary judgment * * *." *Wyso*, 78 A.3d at 750. The sole issue before the trial justice was whether or not there were genuine issues of material fact as to defendant's notice of the spill that would preclude summary judgment. It was not the function of the trial justice to decide those issues or to comment on the probative value of the evidence. *See Hill v. National Grid*, 11 A.3d 110, 114 (R.I. 2011) ("[M]otions for summary judgment should be denied where genuine issues of material fact are present.").

In viewing the evidence in the light most favorable to plaintiff, we conclude that plaintiff satisfied her burden of "produc[ing] competent evidence that prove[s] the existence of a disputed issue of material fact[.]" *Wyso*, 78 A.3d at 750 (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013)). The plaintiff put forth a video taken by defendant's security camera that depicts plaintiff slipping and falling in an aisle of defendant's store. Significantly, the camera records only when it is triggered by movement in the aisle and does not record continuously, thus creating the existence of a question of fact with respect to how long the dangerous condition existed before plaintiff slipped and fell. Additionally, plaintiff presented deposition testimony

from defendant's employees that, at the very least, raises an issue of material fact with respect to defendant's safety procedures or lack thereof.

Moreover, we are of the opinion that the trial justice committed reversible error when he weighed the evidence in his decision granting summary judgment. It is the function of the jury to determine the significance and weight of the evidence that relates to the claim of negligence, and a trial justice should not "arrogate to [himself] the function of determining such facts under the guise of deciding what legal duty (if any) is owed to the plaintiff * * *." *Volpe*, 821 A.2d at 705. Here, the trial justice unequivocally undertook a factual determination when he stated:

> "I have trouble accepting that if that's the case then it would have been leaking when the person picked it up, when your client picked it up or your client's husband picked it up, and it would have been less—unless he picked it up within an instant after that package was put there and there is no evidence of that."

Additionally, the trial justice found:

> "Although Dent has argued that a porter had noticed the drops, whatever the substance was, and began cleaning them on a different aisle before Dent fell, this is not established in the record. I interrupted argument to allow us to look at the video and cannot show—it's clear that he was mopping another aisle[ ], but there is no indication that that mopping occurred prior to the mopping in Aisle 6. There is nothing to—Dent has failed to show that there was any notice given to the defendant. In fact, there are people who are walking down Aisle 6 before she fell. They don't appear to stop. They don't appear to look at anything. They don't appear to call attention to anything. *That doesn't necessarily mean that the substance wasn't there. It just means that obviously it wasn't so obvious that it would call attention to somebody. It appears that once she fell, obviously the porter came and started mopping.*" (Emphasis added.)

We are of the opinion that the trial justice's statements reflect opinion-based credibility and factual evaluations of the evidence presented in this case, an impermissible function at the summary-judgment stage.

We pause to address defendant's argument that plaintiff failed to prove an essential element of her claim—notice—because she failed to produce evidence with respect to the length of time the liquid substance was on defendant's floor. The defendant cites to *Barone* and *Massart*, both cited *supra*, to support its position that plaintiff was required to present evidence showing that she fell because of an unsafe condition on the premises, of which defendant was aware or should have been aware, and that the condition existed for a long enough period of time that defendant should have corrected it. *See Barone*, 767 A.2d at 68; *Massart*, 708 A.2d at 188. The defendant's reliance on *Barone* and *Massart* is misplaced and is of no moment to the case at bar, because those cases were decided at trial, in the context of motions for judgment as a matter of law. There is no requirement at the summary-judgment stage for a plaintiff to produce direct evidence of how long a spill has existed on a floor, because this fact is capable of circumstantial proof. We have never required a plaintiff to produce direct evidence, and we do not require that now. The temporal aspect of a slip-and-fall case can be proven by circumstantial evidence, which is presented to the factfinder. Accordingly, we vacate the judgment granting summary judgment for defendant.

### Breach of Contract, Failure to Warn, and Breach of Implied Warranty

We now turn to plaintiff's claims for breach of contract, failure to warn, and breach of warranty. On appeal, plaintiff alleges that she entered defendant's store as a business invitee, in anticipation of paying adequate consideration for its products, and that defendant breached this contract by failing to maintain the property in a safe manner. It appears that plaintiff is attempting to shoehorn a straightforward premises-liability claim into a breach-of-contract claim. The basis of plaintiff's breach-of-contract claim is that defendant failed to maintain its property in a safe condition. As previously noted, common law premises liability imposes a duty on

- 10 -

landowners to "exercise reasonable care for the safety of persons reasonably expected to be on the premises * * *." *Cooley*, 160 A.3d at 304 (quoting *Kurczy*, 820 A.2d at 935). Having already addressed plaintiff's negligence claim, we need not delve any further into the mischaracterized breach-of-contract claim; a dismissal was proper. Accordingly, we affirm that portion of the judgment dismissing plaintiff's breach-of-contract claim.

Similarly, plaintiff's failure-to-warn claim is simply another inaccurately articulated negligence claim. A duty to warn arises when a defendant has notice of the dangerous propensities of a product. *See Thomas v. Amway Corp.*, 488 A.2d 716, 721 (R.I. 1985); *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I. 1980). Having already determined that genuine issues of material fact remain with respect to whether defendant had notice of the spill, we need not address this duplicitous claim. Therefore, we affirm the dismissal of plaintiff's failure-to-warn claim.

Lastly, plaintiff's breach-of-warranty claims are without merit because there was not a sale under the facts before us. A claim for breach of implied warranty of merchantability requires a plaintiff to "prove that the product is defective, that it was in a defective condition at the time it left the hands of the seller, and that said defect is the proximate cause of the injury." *Lariviere v. Dayton Safety Ladder Co.*, 525 A.2d 892, 896 (R.I. 1987) (quoting *Plouffe v. The Goodyear Tire & Rubber Co.*, 118 R.I. 288, 294, 373 A.2d 492, 495 (1977)). Moreover, G.L. 1956 § 6A-2-314 provides that "a warranty that the goods shall be merchantable is implied in *a contract for their sale* if the seller is a merchant with respect to goods of that kind." (Emphasis added.) It is inconceivable that plaintiff could succeed on a claim of breach of implied warranty of merchantability when a contract for sale was never realized.

Likewise, a breach of implied warranty of fitness for a particular purpose "arises when the seller has reason to know the buyer's particular purpose and that the buyer is relying on the seller's skill or judgment to furnish appropriate goods and the buyer relies on the seller's skill or judgment." *Lariviere*, 525 A.2d at 897. A claim of breach of implied warranty of fitness for a particular purpose is meritorious only if a sale has actually occurred. Our applicable statute states:

> "Where the seller *at the time of contracting* has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under the next section, an implied warranty that the goods shall be fit for such purpose." Section 6A-2-315 (emphasis added).

The plaintiff's claim of breach of implied warranty of fitness for a particular purpose must also be dismissed in light of the fact that plaintiff and defendant never entered into a contract for the sale of the Sunny Delight; therefore, plaintiff is not entitled to relief beyond a reasonable doubt. *See Laurence v. Sollitto*, 788 A.2d 455, 456 (R.I. 2002).

**Mode of Operation**

Lastly, in her amended complaint, plaintiff asserted a claim under the theory of "mode of operation" that is separate and distinct from her negligence claim. The plaintiff contends that mode of operation is not a form of negligence, but rather modifies how the notice requirement of premises liability is met; she cites to Massachusetts common law in support of her position. *See Sheehan v. Roche Brothers Supermarkets, Inc.*, 863 N.E.2d 1276, 1283 (Mass. 2007). However, the Massachusetts Supreme Judicial Court declared in *Sheehan* that "the adoption of the mode of operation approach will not modify the general rule governing premises liability requiring a plaintiff to prove that an owner had either actual or constructive notice of an unsafe condition on the premises." *Id.* at 1286. Mode of operation does not constitute a distinct cause of action, but

rather is a theory that alters the burden of proving actual or constructive notice in premises liability cases. *See id.* at 1286 n.9 ("Adoption of the mode of operation approach is not an adoption of a wholly new law, but merely a refinement of the elements of proof in premises liability cases.").

We are satisfied that the issue of mode of operation does not give rise to a distinct claim in a negligence action. Recently, this Court had occasion to consider the viability of mode of operation in the slip-and-fall context. In *Bates-Bridgmon v. Heong's Market, Inc.*, 152 A.3d 1137 (R.I. 2017), the plaintiff assigned error to the refusal of the trial justice to instruct the jury on the theory of mode of operation. *Bates-Bridgmon*, 152 A.3d at 1145. We determined that the plaintiff failed to request an instruction on mode of operation, and we declined to adopt the theory under our supervisory powers in the face of a record that was devoid of any argument or analysis at the trial level. *See id.* We decline to do so at this juncture. Accordingly, we affirm the dismissal of the plaintiff's mode of operation count.

**Conclusion**

For the reasons set forth herein, we vacate the judgment of the Superior Court granting summary judgment in favor of the defendant on the plaintiff's negligence claim, and we affirm the dismissal of the remaining counts of the plaintiff's complaint. The papers may be remanded to the Superior Court.

**Justice Robinson, dissenting.** I must respectfully but most vigorously record my dissent from the majority's opinion in this case. It is my position that Karen Dent failed to point to any evidence, direct and/or circumstantial, on the basis of which one could infer that PRRC, Inc. d/b/a Price Rite (Price Rite), had actual or constructive knowledge of the spill which purportedly

- 13 -

caused her to fall and sustain an injury. For that reason, I am definitely of the opinion that summary judgment was appropriately granted in this case.

I am well aware of the following normative consideration relative to motions under Rule 56 of the Superior Court Rules of Civil Procedure in negligence cases: "In Rhode Island the general rule is that negligence is a question for the jury unless the facts warrant only one conclusion."[1] *DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979); *see also Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I. 2005). However, as one reflects upon that fundamental principle, it is important not to gloss over the adjective "general" as well as the explicit "unless" clause in the just-quoted sentence. Stated differently, the law is clear that there can be cases (exceptional perhaps, but real nonetheless) where summary judgment is appropriate even in the context of a case of alleged negligence. *See generally Haynes v. Alfred A. Knopf Inc.*, 8 F.3d 1222, 1234 (7th Cir. 1993) (Posner, C.J.) ("[S]ummary judgment is properly granted to a defendant when on the basis of the evidence obtained in pretrial discovery no reasonable jury could render a verdict for the plaintiff."); *see also Wray v. Green*, 126 A.3d 476, 479-80 (R.I. 2015). In my judgment, this is one of those cases.

We have been repeatedly explicit with respect to a plaintiff's burden when a defendant moves for summary judgment: the plaintiff has the burden of "produc[ing] competent evidence t[o] prove[] the existence of a disputed issue of material fact[.]" *Moura v. Mortgage Electronic*

---

[1]     Over the years, I have repeatedly articulated my conviction that disposition of civil cases by summary judgment is a procedural tool that should be engaged in with particular caution and circumspection. *See*, *e.g.*, *DeMaio v. Ciccone*, 59 A.3d 125, 129 (R.I. 2013) ("Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously."); *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 390 (R.I. 2008). I have also joined in opinions of this Court to the effect that only rarely should negligence cases be disposed of by that mechanism. *See*, *e.g.*, *Limoges v. Nalco Co.*, 157 A.3d 567, 571 (R.I. 2017); *Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I. 2005). However, rarely does not mean never.

*Registration Systems, Inc.*, 90 A.3d 852, 856 (R.I. 2014) (internal quotation marks omitted); *see Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 750 (R.I. 2013); *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 605 (R.I. 2011); *Cullen v. Lincoln Town Council*, 960 A.2d 246, 248 (R.I. 2008). While a plaintiff confronted with a summary judgment motion need not "disclose * * * all [his or her] evidence, [said plaintiff] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact." *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 532 (R.I. 2013). Put another way, the plaintiff "cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Cooley v. Kelly*, 160 A.3d 300, 304 (R.I. 2017) (internal quotation marks omitted); *see Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273, 1275 (R.I. 2012); *Empire Acquisition Group, LLC v. Atlantic Mortgage Co., Inc.*, 35 A.3d 878, 882 (R.I. 2012). Failure to abide by the above-cited principles as to the non-movant's responsibility in the Rule 56 context can be fatal to the non-movant. *See Rohena v. City of Providence*, 154 A.3d 935, 938 (R.I. 2017) ("Because the plaintiff failed to produce evidence showing that the city possessed the requisite knowledge to have 'willfully or maliciously' failed to guard or warn of a known danger, this argument does not carry the day.").

In this premises liability case, one of the essential elements that plaintiff was required to prove in order to prevail is that Price Rite had actual or constructive notice of the unsafe condition that purportedly caused her to fall. *See Cooley*, 160 A.3d at 304-05. Accordingly, when confronted with a summary judgment motion filed by defendant, she was required to produce competent evidence of either actual or constructive notice. *Moura*, 90 A.3d at 856. After my thorough perusal of the record in this case and viewing all of the evidence in the light most favorable to plaintiff, I am unable to conclude that she produced any such evidence, either

direct or circumstantial. The majority relies on the following evidence as predicates for its conclusion that plaintiff satisfied her burden of production as the non-moving party under Rule 56: a "video taken by defendant's security camera * * * depict[ing] plaintiff slipping and falling in an aisle of defendant's store" and "deposition testimony from defendant's employees * * *." The video in question shows what happened at the moment that plaintiff slipped.[2] The majority

---

[2] I consider it important to clarify certain statements made in the Facts and Travel portion of the majority opinion with respect to the videotape evidence at issue. The following are the statements in that opinion to which I am referring:

> "[P]laintiff returned to aisle six in search of her husband, but she slipped on a 'brownish oily substance' and was immobilized. Meanwhile, a porter[] was mopping up liquid in an adjacent aisle.[3]"

Footnote 3 that relates to the just-quoted sentences reads as follows:

> "A video, taken on Price Rite's security camera, captures the porter mopping the aisle adjacent to aisle six and plaintiff's slip-and-fall accident. However, the video is not time-stamped and is not continuously streaming, because the camera records only if it is triggered by movement in the aisle."

In my judgment, neither of those statements is wholly accurate. When one reviews the video footage in this case, it is clear that, of the many videos contained in the record, no single video shows both plaintiff's slip and fall as well as a porter mopping in an adjacent aisle. In actuality, there is a video of aisle six, which shows plaintiff's slip and fall, and another video of an adjacent aisle, which shows a porter mopping. However, as the majority candidly notes, these videos are not time-stamped, nor are they continuous streaming videos. As such, we have no way of knowing that plaintiff slipped and fell *while* (the majority says "[m]eanwhile") a porter was mopping in an adjacent aisle. We know only that those two events happened, but there is no evidence in the record that they happened contemporaneously. Indeed, plaintiff's counsel conceded as much to the hearing justice, stating that "[t]here is no absolute way to absolutely determine that because of timestamps." (It is clear from the record that, in referencing time stamps, plaintiff's counsel was referring to the lack of time stamps on the surveillance videos.) Additionally, in the bench decision that he rendered just after viewing the videos which plaintiff asserted were relevant to her case, the hearing justice made the following statement with respect to the evidence of the porter mopping in an adjacent aisle: "Although Dent has argued that a porter had noticed the drops, whatever the substance was, and began cleaning them on a different aisle before Dent fell, this is not established in the record."

opinion correctly states that the video did not record continuously and was triggered by movement. That fact alone, however, does not create, as the majority seems to contend, an issue of material fact. I agree with the majority that it is unclear from the video how long the liquid on which plaintiff slipped had been present on the floor. However, it was not plaintiff's burden to point to evidence only to show that it was not clear how long the spill was present on the floor; rather, she was required to point to competent evidence based on which one could infer that the spill existed, at the location in question, for such a duration as to amount to constructive notice. The video in question does not in any way support an inference that the spill existed for a long enough time to amount to constructive notice; and, for that matter, it does not establish a genuine issue of material fact. *Pimentel v. Deutsche Bank National Trust Co.*, 174 A.3d 740, 744 (R.I. 2017) ("[A] demonstration of mere factual disputes will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphases in original) (internal quotation marks omitted). The plaintiff based her objection to defendant's summary judgment motion on nothing more than conjecture and speculation and facts of a non-probative nature; so scantily supported an objection is insufficient to permit the non-movant to survive a motion for summary judgment. *See*, *e.g.*, *Habershaw*, 42 A.3d at 1274-75, 1277 (deposition testimony by the plaintiff that the floor where she slipped and fell was "shiny" was not "competent evidence of defendant's negligence and plaintiff's allegation [was] nothing more than conjecture or speculation") (internal quotation marks omitted).

The majority also relies upon what it characterizes as the "deposition testimony from defendant's employees." The majority, however, does not provide any explanation with respect

I would add as well that, even if I were to accept the facts exactly as set forth by the majority, it would not alter my belief that Ms. Dent failed to produce competent evidence to survive summary judgment.

to what specific statements of the employees it is relying upon. Contained in the record are the depositions of Jeffrey O. Sparfven, a former Price Rite store manager; David Walmsley, a current (at the time of deposition) store manager; and Brian Betances, a former assistant manager. However, after my thorough review of the deposition testimony of all three individuals, I remain entrenched in the belief that Ms. Dent has presented no competent evidence on the basis of which one could infer that there was actual or constructive notice in this case.

We have repeatedly stated that "summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009) (internal quotation marks omitted); *see Genao v. Litton Loan Servicing, L.P.*, 108 A.3d 1017, 1021 (R.I. 2015); *see also Lavoie v. North East Knitting, Inc.*, 918 A.2d 225, 228 (R.I. 2007) ("[C]omplete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") (alteration in original) (internal quotation marks omitted). Ms. Dent has failed to make such a showing in this case. Accordingly, in my judgment, summary judgment was appropriately entered against her. *See Cooley*, 160 A.3d at 305 (stating that "our review of the testimony presented by * * * plaintiff[] has disclosed no evidence of knowledge, actual or constructive, of a dangerous condition on * * * defendant's part. * * * And [w]hen no evidence of * * * defendant's negligence exists, the granting of [summary judgment] by the trial justice is legally required") (internal quotation marks omitted).

For the foregoing reasons, I must record my vigorous dissent from the majority's opinion in this summary judgment case.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Karen Dent v. PRRC, Inc., d/b/a Price Rite. |
| **Case Number** | No. 2016-129-Appeal.<br>(PC 13-5924) |
| **Date Opinion Filed** | May 22, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Rondal J. Resmini, Esq.<br><br>For Defendant:<br><br>Douglas L. Price, Esq.<br>Matthew Ryan O'Connor, Esq. |